IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 15-cv-02342-RBJ

BENJAMIN HOLDRIDGE,

    Plaintiff,

v.

ROSS BLANK,
THE CITY OF STEAMBOAT SPRINGS, COLORADO

    Defendants.

---

ORDER

---

This matter is before the Court on three pending motions: (1) defendant Ross Blank's motion for summary judgment, ECF No. 78; (2) defendant City of Steamboat Springs, Colorado's motion for summary judgment, ECF No. 80; and (3) plaintiff Benjamin Holdridge's partial motion for summary judgment, ECF No. 82. For the reasons below, the Court GRANTS defendants' motions [ECF Nos. 78, 80] and DENIES plaintiff's motion [ECF No. 82].

## I. FACTS[1]

Plaintiff Benjamin Holdridge, a resident of Steamboat Springs, alleges that several police officers violated his Fourth Amendment rights on the night of September 8, 2014. *See generally* Am. Compl., ECF No. 18. That night, plaintiff and his friend, Ms. Gina Robertson (not a party to this suit), biked into downtown Steamboat Springs from their nearby home to attend a surprise birthday party for one of their friends. Dep. of Benjamin Holdridge, ECF No. 78-1, at 30:17–20.

---

[1] The following facts are largely undisputed unless otherwise noted.

1

Shortly after 11:00pm plaintiff and Ms. Robertson were walking their bikes home on the side of U.S. Highway 40 when Officer Ross Blank, a Steamboat Springs police officer on patrol at the time, pulled his vehicle over to talk with Ms. Robertson. Dep. of Ross Blank, ECF No. 78-2, at 8:4–10:2, 104:11–20. Officer Blank stopped to talk to Ms. Robertson after noticing that she was stumbling as she walked her bike along the road. *Id.* at 48:18–49:5, 104:15–18. At some point during the encounter, Officer Blank asked to see Ms. Robertson's driver's license. *See id.*

As this was happening, Mr. Holdridge, who was walking his bike approximately 50 yards behind Ms. Robertson at the time, tried to catch up to where Officer Blank had stopped to talk to Ms. Robertson. ECF No. 78-1 at 60:1–61:22. As he approached, Mr. Holdridge apparently demanded in an agitated manner to know why Officer Blank stopped to talk with Ms. Robertson and why he was asking her certain questions. *Id.* Plaintiff also yelled out to Ms. Robertson as he approached that she did not have hand over her license to Officer Blank. ECF No. 78-2 at 48:20–49:2.

Seeing this agitated, possibly intoxicated, and then-unknown man appear out of the darkness, Officer Blank ordered Mr. Holdridge to stop and stay put. *See id.* at 49: 3–18; Police Report, ECF No. 78-5, at 2 (plaintiff "appeared angry and intoxicated"). Plaintiff refused, continuing to walk towards Officer Blank and Ms. Robertson. ECF No. 78-2 at 49:24–50:1. At that point, Officer Blank once again ordered plaintiff to stop and stay where he was, adding this time that if plaintiff refused to comply that he would be forced to break out his handcuffs and secure plaintiff in his car. *See id.* at 51:1–3; ECF No. 78-5, at 2. Mr. Holdridge, now within only a couple of feet of Officer Blank and Ms. Robertson, taunted Officer Blank. *See id.* at 51:1–3. "You better do it, then," he said. *Id.* So Office Blank did. ECF No. 78-5 at 2.

2

Gaining control of plaintiff's arms, Officer Blank handcuffed Mr. Holdridge and escorted him over to his police SUV parked nearby. *Id.* The parties dispute whether or not plaintiff resisted. *Id.*; ECF No. 78-1 at 76:4–12. In any event, State Trooper Brendan DiGeorge, who was driving by the scene and saw Officer Blank trying to put someone in a parked police vehicle, quickly stopped and helped Officer Blank secure plaintiff. Dep. of Brendan DiGeorge, ECF No. 78-3, at 11: 13–22. Officer Jeffrey Malchow and Sergeant Scott Middleton, responding to a call Officer Blank apparently put out over his radio at some point during the encounter with plaintiff, also showed up shortly thereafter. Dep. of Jeffrey Malchow, ECF No. 78-4, at 23:9–24. Once he arrived, Officer Malchow went over to speak with Ms. Robertson who remained standing on the side of the road as these events unfolded. *Id.* at 33: 8–21. After several officers determining that she had a safe means to get home, Ms. Robertson subsequently left the scene. *See id.*; ECF No. 78-5 at 2.

Meanwhile, Mr. Holdridge, who was now handcuffed in the back of Officer Blank's vehicle, began to complain that his handcuffs had been put on too tight. *See* ECF No. 78-1 at 99:6–100:14. Hearing plaintiff's complaints, Sergeant Middleton subsequently loosened plaintiff's handcuffs before Officer Blank drove plaintiff to the Routt County jail. Dep. of Scott Middleton, ECF No. 78-8, at 103:2–8.

At some point before he was charged with obstructing a peace officer and resisting arrest—charges that were ultimately dismissed under a diversion agreement, ECF No. 78-6—plaintiff claims that one of the officers on the scene hit him in the face with a flashlight or some other hard object, ECF No. 78-1 at 88:12–24. Initially accusing Trooper DiGeorge of hitting him in interviews immediately after these events took place, see, e.g., Memorandum by Chief Bob Del Valle, ECF No. 78-9, at 2, plaintiff later claimed that he could not recall which officer it was

that allegedly struck him, Memorandum by Sergeant Scott Elliott, ECF No. 78-12, at 5; ECF No. 78-1 at 103:5–14.  For their part, all officers on the scene deny that any one of them struck plaintiff in the face with a flashlight or otherwise.  *See* ECF No. 78-2 at 56:7–15; ECF No. 78-3 at 36:14–37:24; ECF No. 78-4 at 50:7–10, 53:6–18, 65:6–16; ECF No. 78-8 at 78:12–19, 102:17–23.

Procedural History

Roughly a year after these events took place Mr. Holdridge filed suit against Officer Blank, Trooper DiGeorge, Sergeant Middleton, and Officer Malchow, as well as "John Does 1-10" and the City of Steamboat Springs, on October 24, 2015.  Compl., ECF No. 2.  Plaintiff subsequently amended his complaint a few months later on January 4, 2016.  ECF No. 18.  Plaintiff's amended complaint, which is the operative pleading in this action, asserts sixteen claims for relief under 42 U.S.C. § 1983 for violations of the Fourth Amendment.[2]  *See id.* at ¶¶222–342.  In order, they are as follows:

(1) a claim for unlawful seizure against Officer Blank, *id.* at ¶¶222–29;
(2) a claim for excessive force against Officer Blank, *id.* at ¶230–36;
(3) a claim for unlawful arrest against Officer Blank, *id.* at ¶¶237–244;
(4) a claim for unlawful seizure against Sergeant Middleton, *id.* at ¶¶245–52;
(5) a claim for unlawful arrest against Sergeant Middleton, *id.* at ¶¶253–60;
(6) a claim for unlawful seizure against Trooper DiGeorge, *id.* at ¶¶261–68;
(7) a claim for unlawful arrest against Trooper DiGeorge, *id.* at ¶¶269–76;
(8) a claim for excessive force against Trooper DiGeorge, *id.* at ¶¶277–83;
(9) a claim for failure to intercede against Sergeant Middleton, *id.* at ¶¶284–91;
(10) a claim for failure to intercede against Officer Malchow, *id.* at ¶¶292–99;
(11) a claim for failure to intercede against Trooper DiGeorge, *id.* at ¶¶300–07;
(12) a claim to hold the City liable for having official policies or customs resulting in the alleged illegal seizure of plaintiff, *id.* at ¶¶308–14;
(13) a claim to hold the City liable for a failure to train resulting in the alleged illegal seizure of plaintiff, *id.* at ¶¶315–21;
(14) a claim to hold the City liable for a failure to train resulting in the alleged use of excessive force against plaintiff, *id.* at ¶¶322–28;

---

[2] The Fourth Amendment is applicable to the states (and therefore the City and its employees) under the Fourteenth Amendment.  *See Kaufman v. Higgs*, 697 F.3d 1297, 1299 n.2 (10th Cir. 2012).

(15) a claim to hold the City liable for having policies or customs resulting in the alleged use of excessive force against plaintiff, *id.* at 329–35; and

(16) a claim to hold the City liable for having policies or customs resulting in the alleged unlawful arrest of plaintiff, *id.* at ¶¶336–42.

On March 24, 2016 the parties stipulated to the dismissal of Officer Malchow without prejudice. ECF No. 37. Defendants Trooper DiGeorge and Sergeant Middleton subsequently filed motions to dismiss the pending claims plaintiff asserted against them. ECF Nos. 38, 40. Soon thereafter, plaintiff filed an unopposed motion to dismiss Trooper DiGeorge. ECF No. 43. Trooper DiGeorge was subsequently dropped from this lawsuit. ECF No. 45. The parties then stipulated to the dismissal Sergeant Middleton without prejudice on August 8, 2016. ECF No. 59. With Sergeant Middleton dropped from the case, the only remaining defendants were Officer Blank and the City of Steamboat Springs. The only remaining claims were Claims 1–3 (asserted against Office Blank) and Claims 12–16 (asserted against the City) of plaintiff's amended complaint.

Recently, Officer Blank filed a motion for summary judgment to dismiss those three claims pending against him on March 28, 2017. ECF No. 78. Three days later, the City filed a motion for summary judgment of its own to dismiss the five claims left pending against it (Claims 12–16). ECF No. 80. That same day, Mr. Holdridge filed a partial motion for summary judgment on Claims 1, 3, and 16. ECF No. 82. All three pending motions are ripe for review. The parties are currently scheduled to begin trial on Monday, June 26, 2017. ECF No. 57.

## II. STANDARD OF REVIEW

A. **Summary Judgment**

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the

5

nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id*. at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc*. v. *City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

B. **Qualified Immunity**

Officer Blank asserts that he is entitled to qualified immunity. *See, e.g.*, ECF No. 78 at 10. The qualified immunity doctrine "shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Toevs v. Reid*, 646 F.3d 752, 755 (10th Cir. 2011) (internal quotations and citations omitted). When a defendant asserts qualified immunity, the summary judgment standard is subject to a "somewhat different analysis from other summary judgment rulings." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006).

By asserting qualified immunity, a defendant "trigger[s] a well-settled twofold burden" that the plaintiff is "compelled to shoulder." *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015). The burden shifts to the plaintiff to show (1) "that the defendant's actions violated a specific statutory or constitutional right," and (2) that the right was "clearly established at the time of the conduct at issue." *Steffey*, 461 F.3d at 1221. "In determining whether a plaintiff has

carried its two-part burden . . . ordinarily courts must adopt plaintiff's version of the facts." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1325 (10th Cir. 2009) (Holmes, J., concurring) (internal quotations and citation omitted). However, "plaintiff's version of the facts must find support in the record." *Id*.

"It is only after plaintiff crosses the legal hurdle comprised of his or her two-part burden of demonstrating the violation of a constitutional right that was clearly established, that courts should be concerned with the true factual landscape[.]" *Id*. at 1326 (emphasis in original). Considering the true factual landscape, "courts should determine whether defendant can carry the traditional summary judgment burden of establishing that there are no genuine issues of material fact for jury resolution and that defendant is entitled to judgment as a matter of law." *Id*.

### III. ANALYSIS

As mentioned above, all three parties in this case have filed motions for summary judgment. *See* ECF Nos. 78, 80, 82. Because my resolution of Officer Blank's motion impacts the remaining pending motions, I address his motion and arguments first.

**A. Officer Blank's Motion for Summary Judgment [ECF No. 78].**

Officer Blank moves for summary judgments on all three § 1983 claims plaintiff asserts against him (i.e., Claims 1–3). ECF No. 78. On plaintiff's unlawful seizure claim, he argues that such a claim fails as a matter of law because officers are allowed to take reasonable steps (such as detaining intrusive and uncooperative bystanders) to protect themselves and others when carrying out their community caretaking functions or performing investigatory stops. *Id.* at 8–10. He also argues that, at a minimum, he is entitled to qualified immunity because the law was far from "settled" that detention under the circumstances here was unconstitutional. *Id.* at 10–12. On plaintiff's false arrest claim, Officer Blank argues that the undisputed facts show that he had

probable cause to arrest plaintiff for obstructing a police officer under Colorado law. *Id.* at 12–14 (discussing C.R.S. § 18-8-104(1)(a)). He also argues that he is entitled to qualified immunity on this claim as well. *Id.* at 14–16. Finally, Officer Blank contends that plaintiff's excessive force claim fails as a matter of law because the evidence shows that plaintiff only suffered *de minimis* injuries from being handcuffed and because no evidence establishes that it was Officer Blank who allegedly struck plaintiff in the face during the arrest. *Id.* at 16–19. For the reasons below, I agree with Officer Blank that he is entitled to summary judgments on all three claims.

1. **Unlawful Seizure (Claim 1).**

First, Officer Blank is entitled to a summary judgment on plaintiff's unlawful seizure claim because he is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)). To determine whether an officer is entitled to qualified immunity on a given claim, "a court must decide whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right" and then "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232. Neither element is satisfied here.

For starters, plaintiff cannot show a violation of a constitutional right. It is well established that officers can perform "community caretaking functions" in addition to their typical role involving "detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *U.S. v. King*, 990 F.2d 1552, 1560 (10th Cir. 1993); *see also Gallegos v. City of Colo. Springs*, 114 F.3d 1024, 1029 n.4 (10th Cir. 1997) (finding that the detention of a distraught, inebriated man walking down a public sidewalk in the middle of the

night was "a valid noninvestigatory stop" for the purpose of "check[ing] on his welfare."). What's more, as part of carrying out those functions, the Tenth Circuit has recognized that officers "may have occasion to seize a person, as the Supreme Court has defined the term for Fourth Amendment purposes, in order to ensure the safety of the public and/or the individual, regardless of any suspected criminal activity." *King*, 990 F.2d at 1560. Stated somewhat differently, the law allows officers to take reasonable steps necessary in order to preserve the "status quo" on the scene of a given stop. *See United States v. Hensley*, 469 U.S. 221, 235 (1985).

Here, Officer Blank was reasonably justified in seizing plaintiff to ensure that he could carry out what was his legitimate community caretaking role of checking on Ms. Robertson. As the facts reveal, while asking Ms. Robertson if she was okay after seeing her stumbling on the side of the road late at night, Officer Blank encountered an agitated, possibly inebriated, and then-unknown individual heading towards him. *See* ECF No. 78-2 at 49: 3–18. This individual, later identified as plaintiff, disruptively shouted at Officer Blank as he approached. ECF No. 78-1 at 60:1–61:22. Twice, Officer Blank attempted to deescalate the situation by ordering plaintiff to stop advancing towards him so that he could check on Ms. Robertson. ECF No. 78-5 at 2. With the second warning he gave, Officer Blank even cautioned plaintiff that he would detain him if plaintiff could not abide. *Id.* Both times, Mr. Holdridge ignored Officer Blank's orders. *Id.* Continuing to approach, Mr. Holdridge then taunted Officer Blank as he came within a few feet of the officer without any suggestion that he would stop. *See id.*

Under such circumstances, it was reasonable for Officer Blank to detain plaintiff to ensure not only the officer's own safety, but also as a means to enable him to complete his welfare check on Ms. Robertson. *C.f. Gallegos*, 114 F.3d at 1031 (officer's take down of

9

agitated and possibly intoxicated individual late at night and application of the "arm bar maneuver" was reasonable given the individual's objectively threatening and disruptive appearance and behavior); *see also Novitsky v. City of Aurora*, 491 F.3d 1244, 1255 (10th Cir. 2007) ("Because individuals who are intoxicated are often unpredictable, [the defendant officer] was confronted with an additional layer of uncertainty."). Officer Blank's actions therefore did not violate plaintiff's Fourth Amendment right to be free from unlawful seizures.

Furthermore, it logically follows from the facts (even as plaintiff sees them) that defendant's conduct was far from violating a "clearly established" constitutional right. *See Pearson*, 555 U.S. at 231 (describing this second step of qualified immunity analysis); *see also White v. Pauly*, 137 S. Ct. 548, 551 (2017) (explaining that a case need not be directly on point "for a right to be clearly established" but that "existing precedent must have placed the statutory or constitutional question beyond debate") (internal quotation marks and citations omitted). Rather, as the analysis of the law surrounding police "stops" above indicates, quite the opposite is true—it is actually "clearly established" that the law *permits* Officer Blank to "seize" plaintiff under circumstances such as these. *See, e.g.*, *King*, 990 F.2d at 1560. Accordingly, I find that Officer Blank is entitled to qualified immunity on plaintiff's unlawful seizure claim.

### 2. Unlawful Arrest (Claim 2)

Next, I find that, because the undisputed facts reveal that Officer Blank had probable cause to arrest plaintiff or that it was reasonable for him to suspect that he did, Officer Blank is entitled to qualified immunity on plaintiff's unlawful arrest claim as well. "An arrest without a warrant is permissible, and implicates the defense of qualified immunity, when an officer 'has probable cause to believe that a person committed a crime.'" *Johnson v. Town of Vail, Colo.*, CIV. 08-CV-00464-LTB, 2009 WL 1394263, at *6 (D. Colo. May 19, 2009) (quoting *Romero v.*

*Fay*, 45 F.3d 1472, 1476 (10th Cir.1995)). "An officer effecting a warrantless arrest is 'entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest the plaintiff.'" *Id.* (same). As the Tenth Circuit has explained, "[p]robable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007) (quoting *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004)).

Here, the undisputed facts establish that Officer Blank, at the very least, reasonably believed that he had probable cause to arrest plaintiff for obstructing a police officer. Under Colorado law, "[a] person commits obstructing a peace officer . . . when, by using or threatening to use violence, force, physical interference, or an obstacle, such person knowingly obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer, acting under color of his or her official authority[.]" C.R.S. § 18-8-104(1)(a).

By all indications, after plaintiff advanced towards Officer Blank in an agitated manner, refused to comply with the officer's orders to stop, continued walking towards Officer Blank until he was mere feet away, and then taunted the officer, Officer Blank reasonably could have believed that plaintiff had violated C.R.S. § 18-8-104(1)(a). *See Lord v. Hall*, 520 F. App'x 687, 692 (10th Cir. 2013) (unpublished) (distinguishing *Kaufman v. Higgs*, 697 F.3d 1297 (10th Cir. 2012), wherein the Tenth Circuit found mere refusal to answer questions did not amount to a violation of the statute, and finding that refusing to obey a police officer's direct orders, among other things, pushes an individual's conduct over the edge). In other words, Officer Blank reasonably could have perceived plaintiff as threatening to use physical interference to

knowingly obstruct or impair Officer Blank's "preservation of the peace"—i.e., his welfare check on Ms. Robertson. *See* C.R.S. § 18-8-104(1)(a). *See also Dempsey v. People*, 117 P.3d 800, 811 (Colo. 2005) ("[W]hereas mere remonstration does not constitute obstruction, conduct constituting use or threats of 'physical interference' or 'an obstacle' do[es].")

Plaintiff, for his part, sees it differently. He argues that Officer Blank did not have probable cause to arrest plaintiff for a violation of C.R.S. § 18-8-104(1)(a) nor could he reasonably have believed that he did because that law only applies to obstructing, impairing, or hindering the enforcement of *penal* laws. ECF No. 82 at 13–17.[3] I disagree.

To my knowledge, neither the Colorado Supreme Court nor any other court in Colorado has ever construed the statute in that way. And for good reason: the plain language C.R.S. § 18-8-104(1)(a) is phrased in the disjunctive, stating that it is unlawful to obstruct, impair, or hinder "the enforcement of penal laws *or* the preservation of the peace" by police officers.

Indeed, plaintiff's reading of the statute to apply only to the enforcement of penal laws would create an untenable loophole by permitting bystanders to try to prevent officers from performing community caretaking checks or other non-investigatory stops. Such a loophole could very well undermine one apparent purpose of C.R.S. § 18-8-104(1)(a): giving police officers the space and freedom to carry out their numerous, varied, and often difficult job responsibilities without interference or interruption by others. What's more, plaintiff's reading of the statute, by his own admission, also renders language within the statute redundant (i.e., "the preservation of the peace"). ECF No. 82 at 13. That is a kind of statutory interpretation that the

---

[3] Plaintiff also argues that mere verbal remonstration does not constitute a violation of C.R.S. § 18-8-104(1)(a). ECF No. 82 at 16–17. As discussed *supra*, however, plaintiff's nonverbal conduct (i.e., ignoring Officer Blank's commands to stop advancing towards him) which he does not dispute occurred clearly went beyond mere verbal opposition and could reasonably have been perceived as a threat of physical interference or an obstacle. *See Dempsey*, 117 P.3d at 811.

12

Colorado Supreme Court has clearly expressed its preference to avoid. *See, e.g.*, *Wolford v. Pinnacol Assurance*, 107 P.3d 947, 951 (Colo. 2005) ("[W]e must interpret a statute to give effect to all its parts and avoid interpretations that render statutory provisions redundant or superfluous.").

Plaintiff's argument on this point is largely irrelevant in any event. Even if plaintiff's interpretation of the statute is correct, plaintiff cites no compelling case law that suggests that it was "clearly established" that an officer could not arrest someone for threatening to interfere with their community caretaking functions and that he or she violated that individual's constitutional rights by so doing. Simply put, then, even if the statute could be read plaintiff's way, Officer Blank is still entitled to qualified immunity and therefore to a summary judgment in his favor on plaintiff's unlawful arrest claim. *See Pearson*, 555 U.S. at 231.

   3. **Excessive Force (Claim 3).**

Finally, I find that Officer Blank is entitled to a summary judgment on plaintiff's excessive force claim as well. This claim makes two main allegations. First, plaintiff alleges that Officer Blanks' handcuffing of him resulted in the unlawful use of excessive force. *See Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) ("In some circumstances, unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight.") (citations omitted). Second, he argues that being allegedly struck in the face with a flashlight while in handcuffs also constituted the use of excessive force.

Regarding plaintiff's first allegation, the evidence reveals that plaintiff suffered only *de minimis* harms if any from being handcuffed, and that his complaints about his handcuffs being

13

too tight were quickly remedied.[4] Given that Officer Blank's use of handcuffs was warranted, see *supra* Part III.A.1–2, the evidence to support plaintiff's first allegation of use of excessive force does not rise to the level the law requires for a use of excessive force claim, see *Fisher v. City of Las Cruces*, 584 F.3d 888, 897 (10th Cir. 2009) ("To recover on his handcuffing claim, [a plaintiff] must show both that the force used was more than reasonably necessary and 'some actual injury caused by the unreasonable seizure *that is not de minimis*, be it physical or emotional.'") (emphasis in original) (citation omitted); *Cortez*, 478 F.3d at 1129 ("The only evidence in the record is [the plaintiff's] affidavit that the handcuffs left red marks that were visible for days afterward. . . . This is insufficient, as a matter of law, to support an excessive force claim if the use of handcuffs is otherwise justified.").

Second, plaintiff has failed to come forward with enough facts that could establish that Officer Blank personally participated in the alleged striking of plaintiff's face during his arrest. *See Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) ("The plaintiff must show the defendant personally participated in the alleged violation . . . and conclusory allegations are not sufficient to state a constitutional violation.") (citation omitted). Plaintiff nevertheless argues that there is evidence that suggests it *could* have been Officer Blank who hit him. But this evidence is simply insufficient to satisfy the "personal participation" requirement of a § 1983 claim.[5]

As the Tenth Circuit has explained, "it is incumbent upon a plaintiff to 'identify *specific* actions taken by *particular* defendants" in order to make out a viable § 1983 . . . claim." *Pahls v.*

---

[4] Plaintiff asserts that "[t]he full extent of the injuries to [him] due to excessive tightness of the handcuffs is a disputed issue of material fact." ECF No. 89 at 11. Importantly, however, plaintiff cites to no evidence that would establish a genuine dispute.

[5] What's more, the evidence in the record only ever directly points to Trooper DiGeorge as the particular officer who allegedly struck plaintiff in the face. *See, e.g.*, ECF No.78-9 at 2 (recapping an interview with plaintiff wherein he says that the "other officer"—i.e., Trooper DiGeorge—was the one who hit him and specifically affirming that it was not Officer Blank when pressed on it); ECF No. 78-1 at 103:5–23 (repeatedly stating that he does not know which officer allegedly hit him).

*Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (emphasis in original) (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532–33 (10th Cir. 1998)); *id.* ("[W]e have stressed the need for careful attention to particulars[.]"). Given that requirement, a "plaintiff's facile, passive-voice showing that his rights 'were violated' will not suffice. Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that 'defendants' infringed his rights." *Id.* at 1225–26; *c.f. Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("[I]t is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her[.]") (emphasis in original).

Indeed, the Tenth Circuit has "made clear that '[t]o make out [a] viable § 1983 . . . claim[] and to overcome defendants' assertions of qualified immunity,' a plaintiff 'must do more than show that their rights "were violated" or that "defendants," *as a collective and undifferentiated whole*, were responsible for those violations[.]'" *A.M. v. Holmes*, 830 F.3d 1123, 1163 (10th Cir. 2016), *cert. denied sub nom. A. M. ex rel. F. M. v. Acosta*, 16-984, 2017 WL 2039255 (May 15, 2017) (emphasis added) (quoting *Pahls*, 718 F.3d at 1228). Plaintiff's failure to make a "more particularized, defendant-specific[] showing" therefore "dooms" his § 1983 claim by entitling Officer Blank to qualified immunity. *See Pahls*, 718 F.3d at 1228. Accordingly, Officer Blank's motion for summary judgment is GRANTED in full and Claims 1–3 of plaintiff's amended complaint are dismissed with prejudice.

**B. Steamboat Springs' Motion for Summary Judgment [ECF No. 80].**

Next, I consider Steamboat Springs' motion for summary judgment on the five claims asserted against it (i.e., Claims 12–16). At the outset, Steamboat Springs argues that it "may only be held liable if [p]laintiff can demonstrate the existence of an underlying constitutional

violation by Officer Blank *and* show that the violation was a direct result of the City's policy or custom." ECF No. 80 at 9 (emphasis in original). The City therefore contends that none of plaintiff's claims against it can prevail if Officer Blank is found not to have violated any of plaintiff's Fourth Amendment rights. *See id.* The City is correct.

As Judge Ebel explained in *Trigalet v. City of Tulsa, Oklahoma*, 239 F.3d 1150, 1154 (10th Cir. 2001), a municipality cannot be held liable under § 1983 for the allegedly unconstitutional actions of its employees if those actions were not in fact unconstitutional. *See also Webber v. Mefford*, 43 F.3d 1340, 1344–45 (10th Cir. 1994) ("A claim of inadequate training, supervision, and policies under § 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation by the person supervised[.]").

Thus, here, because Officer Blank (the only individual defendant left named in this suit) is entitled to summary judgments on all of the claims asserted against him, see *supra* Part III.A, the City of Steamboat Springs is likewise entitled to summary judgments on the claims asserted against it. *Trigalet*, 239 F.3d at 1154. Steamboat Springs' motion is therefore GRANTED in full and the remainder of plaintiffs' amended complaint left pending in this lawsuit is dismissed with prejudice, at least to the extent they are predicated on actions by Officer Blank.

**C. Plaintiff's Partial Motion for Summary Judgment [ECF No. 82].**

Because I have granted both defendants' motions for summary judgment in full, plaintiff's partial motion for summary judgment on Claims 1, 3 and 16 is accordingly DENIED.

**ORDER**

For the reasons above, the Court GRANTS defendants' motions for summary judgment [ECF Nos. 78, 80] and DENIES plaintiff's partial motion for summary judgment [ECF No. 82]. The Court therefore dismisses with prejudice the remaining pending claims within plaintiff's

amended complaint against Officer Blank (Claims 1–3) and against the City of Steamboat Springs predicated on the actions of Officer Blank (Claims 13–16). *See* ECF No. 18 at ¶¶222–44, 308–42. As the prevailing parties, both Officer Blank and the City of Steamboat Springs are awarded their reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1. The five-day jury trial for this case set to begin on June 26, 2017 is also VACATED.

DATED this 1st day of June, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge